JULIA C. ABERNETHY v. TOWNSHIP OF VAN BUREN.

*Township bridges—Defects—Negligent Driving—Damages.*

1. A township can hardly be held liable for injuries caused by latent defects in a bridge over a mill-race where they do not affect the traveled part of the way and where the miller has apparently not been negligent in performing his statutory duty of looking after the condition of the bridge.

2. There is contributory negligence in driving across a bridge so recklessly and turning off from it so abruptly as to suffer injury in consequence of catching the wheel in or upon some crack or obstruction not in the traveled part of the way. And it is no excuse that others are similarly careless, especially if one is not familiar with the bridge and cannot, therefore, rely upon such carelessness in others.

3. Damages cannot be recovered, whatever the proof or the ad damnum clause, in a greater amount than the aggregate of the items of injury specifically alleged, unless other causes of injury are stated in the declaration.

Error to Wayne. (Speed, J.) Jan. 9.—Jan. 15.

CASE. Defendant brings error. Reversed.

*Samuel W. Burroughs* and *Moore & Moore* for appellant.

*Simon R. Harris* and *Henry M. Cheever*, for appellee, cited as to the township's liability: *Merrill v. Kalamazoo* 35 Mich. 211: *Medina v. Perkins* 48 Mich. 67; *Dotton v. Albion* 50 Mich. 129; *Grand Rapids v. Wyman* 46 Mich. 516; *Burnham v. Byron* id. 555; one who crosses a bridge has a right to presume all parts of it safe: *McGuire v. Spence* 2 N. Y. 214.

CAMPBELL, J. Plaintiff sued for damages from personal injuries claimed to have resulted from defects in a bridge. The declaration sets up that the township had the care and control of it, but does not locate it specifically except as a bridge in a "public street highway" in the township. It turned out on the trial to be a bridge over a mill-race cross-

ing a street in the village of Belleville, within the township of Van Buren.

The declaration further sets up that the bridge was allowed to remain out of repair, in unsafe condition, after reasonable time to have repaired it, and various planks with which it was laid, to be and remain broken, unfastened and removed, whereby the injury was occasioned. The injury was set out as caused by one of the front wheels of the vehicle in which plaintiff was riding, dropping through a hole in said bridge in the traveled part or track of the bridge, caused by one of the planks being broken, unfastened and removed.

The damage sued for was based on certain injuries caused by plaintiff's being thrown out of the buggy in which she rode, whereby her shoulder was put out and her knee pan injured, with other injuries resulting in sickness and disability for a long time and until suit brought, "during all which time she thereby suffered great pain and was hindered from transacting her affairs, to her damage one thousand dollars," and was obliged to lay out money amounting to one hundred dollars for board, lodging, care and medical treatment, to her damage ten thousand dollars.

An error is assigned against allowing a judgment to be entered for $3500 under this declaration, and it seems to us well assigned. There is no allegation of any causes of damage not included within the two sums of one thousand dollars and one hundred, which are given as the sums at which she fixed her claim for the various injuries and consequences. Injuries were allowed to be shown of a different character from those alleged, and this was seasonably objected to. Whether admissible or not, they could not, under the declaration, be allowed to swell the damages beyond the sums claimed.

The facts shown by plaintiff indicate that on August 22, 1882, plaintiff was in a buggy driven by her husband across the bridge in question, in the latter part of the afternoon in broad daylight. The buggy was somewhat shackling, and the shafts large for the horse. The bridge is a double-

track bridge across the mill-race, with two tiers of plank meeting in the middle and covered at the junction, with a plank ridge-board dividing them. It was built many years before the statute of 1879, and the ends of the planks, where they met, were not all sawed even, but left wedge-shaped spaces, one of which at the end of the bridge, when the ridge-plank was shoved aside, allowed the fore wheel of the buggy to sink about an inch and stick fast. The only defect complained of was the loosening at one end and partial displacement of this ridge-board, which covered the joints when in place.

The plaintiff approached the bridge on a downward grade, at a trot fast enough, when the speed was suddenly checked at the further end of the bridge when they had crossed it, to throw both passengers over the front upon the bridge. Instead of driving on either of the two separate tracks the buggy was driven across the middle of the bridge, and the wheel caught as they were turning upon the road on the other side. The whole bridge was plainly visible.

There was some conflict as to when the plank was loosened, but it appeared without contradiction that the mill-owner who was legally bound to keep the bridge in repair, had every few days fastened down this plank as it got loosened by vehicles driving over it, and it did not appear that any township officer had his attention called to it as requiring repair.

If this was the fact there was no negligence in the township, which in the case of such bridges is required to exercise a careful oversight in the manner fixed by statute, which, as amended in 1875, provides that it shall be the mill owner's duty to keep such bridges in repair, and if he "shall refuse or neglect to keep the same in good repair," it shall be the duty of the commissioner of highways of the township to proceed forthwith to repair the same at the owner's expense. Comp. L. § 1310.

While this statute requires of the commissioner that he shall not allow any such bridge to remain out of safe repair, yet if the mill-owner does not allow it to remain out of

apparently good condition it can hardly be assumed, without more evidence than the record contains, that the commissioner was negligent in not discovering latent defects. The portion of the bridge which is claimed to have been out of order formed no part of it which was designed for travel; and while we do not say that any part of a bridge can be properly left where, in the absence of light or from other causes, it may involve danger to passers-by, it is nevertheless very clear that such parts of the structure as cannot be knowingly used without leaving the way meant for travel, do not require the same vigilance as the rest.

In the present case the vehicle of plaintiff was driven upon the bridge at what was manifestly a pretty fast rate, and the difficulty was directly caused by driving where it was improper to drive and turning sharply where, if the ridge-board had been firmly nailed down, there would have been risk of a jolt or wrench of a not very different nature from what actually occurred. It does not appear to us that it is easy to avoid the conclusion that the accident was attributable to a large extent to the immediate carelessness of Mr. Abernethy, who appears without dispute to have paid no regard whatever to what he was doing. The fact that other people may also have been careless does not make any difference with his obligation, and as he says he had not been familiar with the bridge he could not have relied on a careless habit of which he was ignorant. But from his own statement he was entirely careless as to what he did, and paid no attention to his surroundings. .

As the damages go beyond the demand, there must necessarily be a reversal on that ground, and there seems to be also a variance in describing the defect in the bridge as in the traveled track, which it clearly was not. The errors which we have further pointed out render it useless to consider the further numerous assignments.

For the reasons given we are compelled to reverse the judgment with costs and order a new trial.

The other Justices concurred.